UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CURTIS LaPLANTE,

               Plaintiff,                                     Hon. Janet T. Neff

v.                                                   Case No. 1:19-cv-947

COMMISSIONER OF SOCIAL
SECURITY,

               Defendant.

_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act.   Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of Social Security appeals, the undersigned recommends that the Commissioner's decision be affirmed.

## STANDARD OF REVIEW

The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process.   *Tucker v.*

*Commissioner of Social Security*, 775 Fed. Appx. 220, 225 (6th Cir., June 10, 2019). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *Id.* at 224-25.   Substantial evidence is more than a scintilla, but less than a preponderance, and constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Livingston v. Commissioner of Social Security*, 776 Fed. Appx. 897, 898 (6th Cir., June 19, 2019).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *Biestek v. Commissioner of Social Security*, 880 F.3d 778, 783 (6th Cir. 2017).   The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.  *Moruzzi v. Commissioner of Social Security*, 759 Fed. Appx. 396, 402 (6th Cir., Dec. 21, 2018).   This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *Luukkonen v. Commissioner of Social Security*, 653 Fed. Appx. 393, 398 (6th Cir., June 22, 2016).

## **BACKGROUND**

Plaintiff was 26 years of age on his alleged disability onset date. (ECF No. 5-5, PageID.355). He possesses an 8th grade education and worked previously as a fast food worker and kitchen helper. (ECF No. 5-2, PageID.46, 66). Plaintiff applied for benefits on September 30, 2014, alleging that he had been disabled since December 31, 2007, due to spinal pain and a learning disability. (ECF No. 5-5, 5-6, PageID.355-67, 406).

Following an administrative hearing, ALJ David Kurtz denied Plaintiff's applications. (ECF No. 5-2, 5-3, PageID.108-52, 191-204). The Appeals Council vacated this decision, however, and remanded the matter to a different ALJ. (ECF No. 5-3, PageID.211-12). Following a second administrative hearing, ALJ Dennis Raterink, in an opinion dated August 15, 2018, determined that Plaintiff did not qualify for disability benefits. (ECF No. 5-2, PageID.31-47, 54-107). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (*Id.,* PageID.20-24). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on September 30, 2008. (*Id.*, PageID.34). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f). If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a non-exertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff bears the burden to demonstrate he is entitled to disability benefits and he satisfies his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A). While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *O'Neal v. Commissioner of Social Security*, 799 Fed. Appx. 313, 315 (6th Cir., Jan. 7, 2020).

The ALJ determined that Plaintiff suffers from: (1) intellectual disorder; (2) degenerative disc disease of the lumbar spine; (3) degenerative joint disease of the left knee; (4) obesity; and (5) disorders of the skin, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy

-4-

the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1.   (ECF No. 5-2, PageID.34-38).   With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the ability to perform a limited range of sedentary work.   (*Id.*, PageID.38).

The ALJ found that Plaintiff was unable to perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that there exists in the national economy a significant number of specific jobs which Plaintiff can perform, his limitations notwithstanding. *O'Neal*, 799 Fed. Appx. at 316.   In satisfying this burden, the ALJ may rely on a vocational expert's testimony.   *Ibid.*

In this case, a vocational expert testified that there existed approximately 105,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding.   (ECF No. 5-2, PageID.97-102).   This represents a significant number of jobs.   *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, the ALJ concluded that Plaintiff was not entitled to benefits.

## I.    The ALJ's Appointment

In *Lucia v. Securities and Exchange Commission*, 138 S.Ct. 2044 (2018), the Court held that Administrative Law Judges (ALJs) of the Securities and Exchange Commission (SEC) had to be appointed to their office in the manner proscribed by the Appointments Clause of the United States Constitution.    *Id.* at 2049-55. Pursuant to the Appointments Clause, the ALJs in question were required to be appointed by the President, Courts of Law, or Heads of Departments.    *Id.* at 2049-55.    Absent such appointment, the ALJs employed by the SEC lacked the authority to perform their assigned tasks.    *Id.* at 2049-55.    Plaintiff argues that he is entitled to relief because the ALJ in this case was "not properly appointed."    Plaintiff's claim fails for two reasons.

First, ALJ Raterink was appointed in the manner proscribed by the *Lucia* Court.    On July 16, 2018, and in response to the *Lucia* decision, the Commissioner ratified the appointments of the Social Security ALJs and approved those appointments as her own.    Titles II and XVI: Effect of the Decision in *Lucia v. Securities and Exchange Commission (SEC) on Cases Pending at the Appeals Council*, SSR 19-1p, 2019 WL 1324866 at *2 (S.S.A., Mar. 15, 2019).    The ALJ denied Plaintiff's claim one month later, on August 15, 2018.

Second, even if the ALJ had not been properly appointed, Plaintiff has waived this argument by raising it for the first time in this Court.    In *Lucia*, the Court held that "one who makes a *timely challenge* to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief."    *Lucia*, 138

-6-

S.Ct. at 2055 (emphasis added).   The Court found that Lucia was entitled to relief because he timely challenged the appointment of the ALJ hearing his case by asserting such during the administrative process before the SEC.   *Ibid.*

Lower federal courts have subsequently concluded that, based on *Lucia*, a Social Security claimant must raise the ALJ appointment issue before the Social Security Administration, otherwise such is untimely and, accordingly, waived.   *See, e.g., Nunez v. Saul*, 2020 WL 967475 at *11-14 (D.Conn., Feb. 28, 2020); *Hinds v. Saul*, 2020 WL 1043448 at *6-7 (N.D. Iowa, Mar. 4, 2020); *Koetje v. Commissioner of Social Security*, 2020 WL 1242578 at 4-5 (W.D. Mich., Mar. 16, 2020).   These decisions are persuasive and consistent with the express holding in *Lucia*. Accordingly, the Court rejects this argument.

## II.    Section 12.05 of the Listing of Impairments

The Listing of Impairments, detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1, identifies various impairments, which, if present to the severity detailed therein, result in a finding that the claimant is disabled.   In his opinion, the ALJ discussed at length his rationale for concluding that Plaintiff did not satisfy Listing 12.05, which concerns intellectual disorders.   Plaintiff asserts two errors in the ALJ's analysis regarding Listing 12.05: (1) the ALJ assessed Plaintiff's claim using an inapplicable version of the Listing, and (2) the ALJ's conclusion that he does not satisfy Listing 12.05 is not supported by substantial evidence.

### A.    The ALJ Applied the Proper Version of Listing 12.05

On September 26, 2016, the Social Security Administration published "final rules" revising the criteria for assessing claims under Section 12.05 of the Listing of Impairments.  *See Revised Medical Criteria for Evaluating Mental Disorders*, 81 Fed. Reg. 66138-01, 2016 WL 5341732 (S.S.A., Sept. 26, 2016).  As the summary of this publication states:

> We are revising the criteria in the Listings of Impairments (listings) that we use to evaluate claims involving mental disorders in adults and children under Titles II and XVI of the Social Security Act (Act).  The revisions reflect our program experience, advances in medical knowledge, recommendations from a commissioned report, and public comments we received in response to a Notice of Proposed Rulemaking (NPRM).

*Id.* at *66138.

Pursuant to this action, the requirements of Listing 12.05 were revised effective January 17, 2017.  *Id.*  As for whether this revised Listing applied to claims initiated prior to January 17, 2017, the Commissioner stated, "[w]hen the final rules become effective, we will apply them to new applications filed on or after the effective date of the rules, and to claims that are pending on or after the effective date."  *Id.*  Plaintiff argues that because he filed his claims for disability benefits in 2014, the ALJ should have applied the version of Listing 12.05 in effect as of the date he filed his applications.  Defendant counters that because the ALJ did not resolve Plaintiff's applications until 2018, the ALJ properly applied the revised version of Listing 12.05.

In *Combs v. Commissioner of Social Security*, 459 F.3d 640 (6th Cir. 2006) (en banc), the Sixth Circuit addressed the question raised by Plaintiff's claim. Specifically, the issue in *Combs* concerned the elimination of a section of the Listing of Impairments following the claimant's disability applications, but before a decision on such was rendered.  *Id.* at 641-45.  As the *Combs* court stated, "[t]his case presents the question whether a change in a rule governing the adjudication of social security disability benefits claims that is applied as of its effective date to all pending cases has an impermissibly retroactive effect."  *Id.* at 641.

Applying the standards articulated by the Supreme Court, the Sixth Circuit concluded that changes to the Listings that take effect during the pendency of a claimant's application for benefits does not violate the general presumption against retroactive legislation or rule making.  *Id.* at 645-49.  In reaching this conclusion, the court determined that elimination of the Listing in question did not alter "[t]he ultimate criteria for disability," but instead only modified "a presumption designed for administrative workability."  *Id.* at 647.  As the court further concluded:

> The relevant activity is the agency application of the five-step procedure, not the date when claimant asserts that disability started, or the date the claim is filed.  This is because it is the application of the five-step process that the regulatory change is directed toward, not the substantive basis for disability eligibility.  In other words, the regulatory change had no retroactive effect because the presumption defined by the listing is a rule of adjudication and therefore has its effect on claims at the time of adjudication.

*Id.* at 649.

In short, the *Combs* court held that, when adjudicating a claim for disability benefits, an ALJ properly applies the Listings in effect as of the date of his decision, not the date on which the claimant filed his application.

As Plaintiff notes, however, the *Combs* decision does not appear to be binding on this Court given that the decision was not adopted by a majority of the court. *Combs* was decided by a plurality of seven of the judges sitting en banc.   *Id.* at 641-52.   One judge concurred in the judgment, agreeing with the majority's ultimate resolution but disagreeing with the majority's analysis.   *Id.* at 652-57.   One judge concurred in part with the majority.   *Id.* at 657-61.   Five judges dissented.   *Id.* at 661-76.   Thus, while the conclusion that an ALJ properly applies the Listings in effect as of the date of his decision garnered support from a majority of judges, only 7 of 14 judges agreed on the analysis to be applied in such a circumstance. Nevertheless, the Court finds the analysis articulated by the seven judge plurality decision persuasive and consistent with Supreme Court authority.

In *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), the Supreme Court observed that "[a] statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment . . . or upsets expectations based in prior law."   *Id.* at 269.   Instead, the question is whether "the new provision attaches new legal consequences to events completed before its enactment."   *Id.* at 269-70.   In making this assessment, the Court examines the following factors: (1) fair notice; (2) reasonable reliance; and (3) settled expectations.   *Id.* at 270.

-10-

Plaintiff presents no argument that consideration of the *Landgraf* factors weigh in his favor.  While this failure is sufficient grounds to reject Plaintiff's argument, the Court has nevertheless examined the factors and concludes that applying the revised Listing to Plaintiff's claims is not impermissibly retroactive. The Court is not persuaded that Plaintiff became impaired or undertook any other action, including applying for disability benefits, in reliance on the Listing as previously articulated.   The Court is also not persuaded that Plaintiff possessed any settled expectation that the Commissioner would utilize one formulation over another when determining if he met the presumptive disability requirements of the Listings.   In sum, the Court concludes that the ALJ properly applied the Listings in effect as of the date of his decision.

B.      The ALJ's Decision is Supported by Substantial Evidence

Listing 12.05 articulates two different analyses to satisfy its requirements. Section 12.05(A) applies where a claimant lacks the cognitive ability to participate in standardized intelligence testing.   20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00(H).   Because Plaintiff participated in standardized intelligence testing, his claim is analyzed under § 12.05(B) of the Listing.   To satisfy this Listing, Plaintiff must make three showings.

First, he must possess either (a) a full-scale IQ score of 70 or below, or (b) a full-scale IQ score of 71-75 accompanied by a verbal or performance IQ score of 70 or below.   20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.05(B)(1).   Second, Plaintiff must exhibit "significant deficits in adaptive functioning."   20 C.F.R., Part 404,

Subpart P, Appendix 1, § 12.05(B)(2).    Plaintiff satisfies this requirement by establishing that he experiences extreme limitation in one, or marked limitation in two, of the following areas of mental functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; or (4) adapt or manage oneself.    *Id.*    Finally, Plaintiff must establish that his disorder began prior to age 22.   20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.05(B)(3).

The ALJ concluded that Plaintiff satisfied subsections (B)(1) and (B)(3), but failed to meet the requirements of subsection (B)(2).   (ECF No. 5-2, PageID.35-38). With respect to subsection (B)(2), the ALJ found that Plaintiff experiences (1) moderate limitation in his ability to understand, remember, or apply information; (2) mild limitation in his ability to interact with others; (3) moderate limitation in his ability to concentrate, persist, or maintain pace; and (4) moderate limitation in his ability to adapt or manage himself.   (*Id.*, PageID.37-38).

The relevant Social Security regulations define moderate, marked, and extreme limitations as follows.   A moderate limitation is one in which "your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair."   20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00(F)(2)(c).   A marked limitation is one in which "your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited."   20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00(F)(2)(d).   An extreme limitation is one in which "you are not able to function in this area independently, appropriately,

-12-

effectively, and on a sustained basis."   20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00(F)(2)(e).

A.    Understand, Remember, or Apply Information

The ALJ acknowledged that Plaintiff's low IQ scores were evidence that Plaintiff experienced an "intellectual disorder."   (ECF No. 5-2, PageID.37).   The medical professionals who have cared for Plaintiff through the years have not indicated that Plaintiff is unable to understand the impairments he experiences or the treatment he must undertake for such.   Moreover, when Plaintiff has required treatment he has affirmatively expressed his understanding and consent.   (ECF No. 5-7, 5-8, PageID.542, 551, 570, 581, 603, 616, 654, 750-52).   A pair of psychologists who examined Plaintiff concluded that Plaintiff "is capable of understanding and retaining simple, concrete instructions/directions meant to lead to the completion of a task provided he is given the opportunity for clarification if needed."   (ECF No. 5-7, PageID.523-24).

Plaintiff's counsel responds that Plaintiff "can barely read (if he really can [read] at all)," but as Defendant observes, this assertion is contradicted by the record. Plaintiff stated in his application for disability benefits that he was able to read and write and uses email.   (ECF No. 5-6, PageID.405).   Plaintiff has also testified that he is able to read and write.   (ECF No. 5-2, PageID.68, 134).   The ALJ found that Plaintiff experienced "moderate" limitation in his ability to understand, remember, or apply information.   This determination is supported by substantial evidence.

B.    Interact with Others

Plaintiff's care providers have not indicated that Plaintiff's ability to interact with them or others is limited or impaired. To the contrary, the record contains many affirmative indications that Plaintiff is properly oriented, cooperative, speaks clearly, and maintains good eye contact. (ECF No. 5-7, 5-8, 5-9, 5-10, PageID.512-13, 523-24, 737, 816, 880, 971). Plaintiff, on the other hand, has identified no evidence supporting his argument, and this Court cannot re-weigh the evidence that was presented to the ALJ. The ALJ found that Plaintiff experienced "mild" limitation in his ability to understand, remember, or apply information. This determination is supported by substantial evidence.

C.      Concentrate, Persist, or Maintain Pace

In a function report regarding his activities and limitations, Plaintiff reported that his impairments impacted his ability to stand, walk, and sit, but specifically did not select the options indicating that he experienced difficulty with "memory," "completing tasks," or "concentration." (ECF No. 5-6, PageID.442). Plaintiff's care providers have not reported that Plaintiff experiences difficulty in this area. In support of his argument, Plaintiff cites to a 1988 evaluation conducted when Plaintiff was in kindergarten. (ECF No. 5-8, PageID.804-07). The evaluator observed that Plaintiff "seemed to have a short attention span," but otherwise did not observe behavior or limitation supporting the argument that Plaintiff's limitation in this area of function is marked or extreme. The ALJ found that Plaintiff experienced "moderate" limitation in his ability to concentrate, persist, or maintain pace. This determination is supported by substantial evidence.

D.    Adapt or Manage Oneself

The ALJ acknowledged that Plaintiff experienced difficulty handling stress and changes in routine.  (ECF No. 5-2, PageID.37).  As the ALJ further noted, however, Plaintiff is able to care for himself, perform simple household tasks, prepare simple meals, and participate in shopping.  (*Id.*, PageID.37-38).  Again, Plaintiff fails to articulate an argument or identify evidence in support of his position that the ALJ's finding is not supported by substantial evidence.  The Court declines Plaintiff's invitation to independently search the record and/or re-weigh the evidence that was before the ALJ.  The ALJ found that Plaintiff experienced "moderate" limitation in his ability to adapt or manage himself.  This determination is supported by substantial evidence.

Plaintiff bears the burden to demonstrate that he satisfies the requirements of a listed impairment.  *See Kirby v. Comm'r of Soc. Sec.*, 2002 WL 1315617 at *1 (6th Cir., June 14, 2002).  An impairment satisfies a listing, however, "only when it manifests the specific findings described in all of the medical criteria for that particular impairment."  *Lambert v. Commissioner of Social Security*, 2013 WL 5375298 at *8 (W.D. Mich., Sept. 25, 2013) (citing 20 C.F.R. §§ 404.1525(d) and 416.925(d)).  The ALJ's decision that Plaintiff failed to satisfy this Listing is supported by substantial evidence.  Accordingly, this argument is rejected.

### III.   Plaintiff's Obesity

Plaintiff argues that the ALJ failed to properly consider his obesity when assessing his RFC.   Plaintiff asserts that the ALJ failed to comply with Social Security Ruling 02-1p, Titles II and XVI: Evaluation of Obesity, 2000 WL 628049 (S.S.R., Sept. 12, 2002).   As the Sixth Circuit has held, Social Security Ruling 02-1p "does not mandate a particular mode of analysis, but merely directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation."   *Nejat v. Commissioner of Social Security*, 359 Fed. Appx. 574, 577 (6th Cir., Dec. 22, 2009); *see also*, *Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 412 (6th Cir., Jan. 31, 2006) ("[i]t is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants").

The ALJ recognized that Plaintiff is obese and analyzed the entire record in support of his conclusion that Plaintiff could perform a very limited range of sedentary work.   Again, rather than demonstrate that the ALJ's assessment lacks substantial evidence, Plaintiff looks to this Court to search the record for evidence and/or re-weigh such.   This, the Court cannot do.   The Court finds that the ALJ's RFC determination sufficiently accounts for Plaintiff's obesity and the limitations reasonably imposed by such.   Accordingly, this argument is rejected.

## **<u>CONCLUSION</u>**

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be affirmed.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice.   28 U.S.C. § 636(b)(1)(C).   Failure to file objections within such time waives the right to appeal the District Court's order.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: June 5, 2020

    /s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge

-17-